IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARNAVI SPLENDOR GMBH & CO. KG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-1141 |
| | § | |
| ALSTOM POWER CONVERSION, INC., | § | |
| CONVERTEAM GROUP SAS; | § | |
| CONVERTEAM SAS; and | § | |
| CONVERTEAM INC., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants Converteam Group SAS, Converteam SAS, and Converteam Incorporated's Motion to Dismiss for *Forum non Conveniens* (Document No. 55). After having carefully considered the parties' written submissions and having had a telephonic hearing with the parties to receive clarification on Plaintiff's actual damages, the Court concludes for the following reasons that the motion should be granted.

I.  Background

Plaintiff Marnavi Splendor GMBH & Co. KG, a German company, sued Defendants Alstom Power Conversion, Inc. ("Alstom"), Converteam Group SAS, Converteam SAS, and Converteam Inc. (collectively "the Converteam Defendants") for Defendants' purported failure correctly to install, maintain, and repair a main

engine control system on Plaintiff's vessel, the M/V Ievoli Splendor (the "M/V Ievoli").  This failure, in turn, caused the M/V Ievoli to allide with a moored barge in the Houston Ship Channel.

The M/V Ievoli's engine system was designed and manufactured in France by Alstom Industrie, SA, a French company, pursuant to a 1999 contract between it and an Italian shipyard, Fincantieri Cantieri Navali Italiani S.p.A. ("Fincantieri").[1]  Alstom Industrie later "contributed its business to Alstom Power Conversion, SA."[2]  Converteam SAS, another French company, "has assumed certain liabilities" of Alstom Power Conversion, SA.[3]  Converteam Group SAS is the holding company of Converteam SAS; Converteam, Inc. is the U.S. subsidiary of Converteam Group SAS.[4]

According to Plaintiff, Fincantieri delivered the M/V Ievoli to an unknown entity upon its completion in 2000.[5]  It was then sold to Eoliana Gestao Nevegacao, which in turn sold the vessel to Plaintiff in August 2004.[6]

---

[1] Document No. 55 at 2; *see also* id., ex. A (the design contract); id., ex. B at 1 (Berkrouber Affidavit).

[2] Document No. 55 at 3.  Alstom Power Conversion, Inc. is apparently the U.S. subsidiary of Alstom Power Conversion, SA. Document No. 59 at 4.

[3] Document No. 55 at 3.

[4] Id.

[5] Document No. 59 at 2.

[6] Id.

On December 15, 2004, while attempting to moor at the Vopak Dock No. 3 in the Houston Ship Channel, the M/V Ievoli's main engine control system allegedly malfunctioned, causing the vessel to allide with a moored barge, resulting in damage to both vessels and the dock, as well as a bunker fuel leak into the water.[7]  Five days later, the main engine control system allegedly malfunctioned again, but no damages occurred.[8]

The M/V Ievoli thereafter departed Houston, but while in Brazil in February and March 2005, the engine system allegedly again failed.[9]  In response, Defendants sent engineers from France to inspect the system.[10]  During this period, Defendants allegedly determined that a main engine control system circuit board was defective and the cause of the engine control problems.[11]  They replaced all similar circuit boards in the main engine control system, and the M/V Ievoli's engine control system has had no further malfunctions.[12]

---

[7] Id. at 2-3.

[8] Document No. 19 at 4; Document No. 59 at 3.

[9] Id.; Document No. 19 at 4.

[10] Document No. 59 at 4.  It is unclear whether these were employees of Alstom or of one of the Converteam Defendants.  While Plaintiff alleges the engineers were sent from Alstom, Defendants assert that Converteam SAS "has assumed certain liabilities of" Alstom.  Document No. 55 at 3.

[11] Document No. 19 at 5.

[12] Id.

Plaintiff sued Alstom, which allegedly designed, manufactured, installed, and maintained the control system.[13]   After Alstom asserted that it had been sold, including its liabilities, to "Converteam Inc.,"[14] Plaintiff added Converteam Group SAS, Converteam SAS, and Converteam Inc., respectively, on the belief that each may be successors-in-interest to Alstom.[15]   In its Third Amended Complaint, Plaintiff asserts claims for breach of contract; negligence; breach of implied warranty against hidden defects; negligent design and manufacture; breach of warranties; and indemnity.[16]

Vopak Terminal Deerpark, Inc. ("Vopak"), owner of the dock damaged in Houston, intervened in this suit in November 2007.[17] Defendants settled with Vopak, and all parties stipulated to its dismissal with prejudice on September 3, 2009.[18]   The next day, Defendants moved to dismiss Plaintiff's Third Amended Complaint on the basis of *forum non conveniens*.[19]

---

[13] *See* Document No. 1 at 1-7; Document No. 24 at 2.

[14] *See* Document No. 10 at 2.

[15] *See* Document Nos. 3, 7, 19.

[16] Document No. 19 at 5-8.

[17] Document Nos. 23, 25.

[18] Document No. 54; *see also* Document No. 55 at 5.

[19] Document No. 55.

4

## II.   Discussion

A.   Standard

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 102 S. Ct. 252, 266 (1981); *see also* Saqui v. Pride Cent. Am. LLC, --- F.3d ---, 2010 WL 184252, at *4 (5th Cir. 2010).  When applying the doctrine, however, a district court should use the controlling procedural framework set out by the Fifth Circuit in In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom.* Pan Am. World Airways, Inc. v. Lopez, 109 S. Ct. 1928 (1989), *reinstated except as to damages by* In re Air Crash Disaster Near New Orleans, La., 883 F.2d 17 (5th Cir. 1989) (en banc).  The procedural framework involves a three-step analysis in which the defendant has the burden of persuasion. Id. at 1164-66.  This burden of persuasion runs to all elements of the *forum non conveniens* analysis, id. at 1164, and the defendant must show that the balance of the elements strongly favors dismissal. Gulf Oil Corp. v. Gilbert, 67 S. Ct. 839, 843 (1947), *superseded on other grounds by* 28 U.S.C. § 1404.  Where, as here, a foreign plaintiff has selected an American forum, that selection deserves less deference than would normally be accorded a plaintiff's choice of forum. Air Crash, 821 F.2d at 1164 (citing Reyno, 102 S. Ct. at 265-66).

5

The three steps of analysis are: (1) determining if an alternative forum exists; (2) considering the "relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum"; and (3) weighing the relevant public interest, if the private interests are either nearly in balance or do not favor dismissal.  Id. at 1165-66.  Although a moving defendant is not required to submit overly detailed affidavits to carry its burden in each of these steps, it must provide enough information to enable the district court to conduct an appropriate balance of the parties' interests. Saqui, 2010 WL 184252, at *6; Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1550 (5th Cir. 1991).  This analysis must be carried out in light of the circumstances at the time of the motion's filing-- not the time at which the action commenced.  Air Crash, 821 F.2d at 1166.  Finally, if the district court decides dismissal is appropriate, it must nonetheless "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  Id. at 1166.  Moreover, the court must enable the plaintiff to return to the American forum "if the defendant obstructs such reinstatement in the alternative forum." Id.; see also Robinson v. TCI/US W. Commc'ns Inc., 117 F.3d 900, 907-08 (5th Cir. 1997).

B.   <u>France as an Alternative Forum</u>

"An alternative forum exists when it is both available and adequate." Saqui, 2010 WL 184252, at *4, (citing Air Crash, 821 F.2d at 1165). A forum is available when "the entire case and all parties can come within the jurisdiction of that forum." Id. A defendant's submission to the jurisdiction of another forum renders that forum available. In re Ford Motor Co., 591 F.3d 406, 412 (5th Cir. 2009) (citing Veba-Chemie A.G. v. M/V GETAFIX, 711 F.2d 1243, 1245 & n.3 (5th Cir. 1983)); see also Syndicate 420 at Lloyd's London v. Early Am. Ins. Co., 796 F.2d 821, 830 (5th Cir. 1986). Here, Defendants have expressly agreed to submit to the jurisdiction of the French courts, making France an available forum.[20]

France is also an adequate forum. A forum is adequate when "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American Court." Gonzalez v. Chrysler Corp., 301 F.3d 377, 379-80 (5th Cir. 2002) (quoting Air Crash, 821 F.2d at 1165). While less favorable standards or lower potential recovery do not render an alternative forum inadequate, there may exist "rare circumstances" where the remedy offered by a forum is "clearly inadequate," such as when "the alternative forum does not

---

[20] See Document No. 55 at 8; Document No. 60 at 2.

7

permit litigation of the subject matter of the dispute." <u>Piper
Aircraft</u>, 102 S. Ct. at 265 n.22; *see also* <u>Gonzalez</u>, 301 F.3d at
380.  Defendants have shown that such rare circumstances are not
present here.  As per the affidavit of Margareth Bykoff, a French
attorney who has practiced in France for over 15 years, Plaintiff's
causes of action of negligence, breach of contract, and breach of
warranty exist in France and are commonly pursued in French
courts.[21]   Moreover, a number of federal cases reflect the
availability and adequacy of French forums in general, and
Plaintiff has cited none to the contrary.  *See, e.g.*, <u>In re Vioxx
Prods. Liab. Litig.</u>, 448 F. Supp. 2d 741, 746 (E.D. La. 2006)
(finding France and Italy to be available and adequate, and
collecting cases doing same).

C.   <u>Balance of Private and Public Interest</u>

Factors relevant to the parties' private interests are:
(1) the relative ease of access to evidence; (2) the availability
of compulsory process for the attendance of unwilling witnesses;
(3) the cost of obtaining attendance of willing witnesses; (4) the
possibility of viewing any relevant premises; and (5) all other
practical factors that make trial expeditious and inexpensive.
<u>Saqui</u>, 2010 WL 184252, at *6 (citing <u>Gulf Oil</u>, 67 S. Ct. at 843).
A court need weigh the public interests only if it cannot determine

---

[21] Document No. 60, ex. A at 1 (Bykoff Affidavit).

whether the private interests favor dismissal. <u>Air Crash</u>, 821 F.2d at 1165-66.

Here, Defendants have carried their burden to show that the weight of the private interests strongly favors dismissal.

### 1.   *Ease of Access to Evidence*

Plaintiff alleges in its Third Amended Complaint that Defendants were negligent in the installation, maintenance, and repair of the engine control system, and that Defendants negligently designed and manufactured the system.[22]  These actions resulted in three different incidents of engine malfunction, two of which took place in Houston, one in Brazil.[23]  As observed on page 1, because Plaintiff itself is a foreign entity from Germany, its forum choice is entitled less deference than an American plaintiff's.

Defendants agree to stipulate to the full amount of Plaintiff's actual damages--$964,550 for vessel repair, pollution cleanup and control, tug and pilot services, and reimbursement for federal and state fines, plus $118,220 for loss of charter hire,

---

[22] Document No. 19 at 5-7.  Plaintiff also asserted claims for breach of contract and breach of warranty.  <u>Id.</u>  However, Plaintiff asserts in its Response to Defendants' Motion to Dismiss that "there is no contract at issue in the case at bar," and that it "was not a party to any contract" for the purchase of the vessel. *See* Document No. 59 at 1, 11.

[23] Plaintiff does not allege that it suffered damages in Brazil.

for a total of $1,082,770.[24]  In a hearing conducted by telephone on February 22, 2010, Plaintiff clarified that this is the full amount of Plaintiff's actual damages that Plaintiff sustained and for which it seeks recovery from Defendants.  Plaintiff asserts, however, that it may sustain an additional loss depending upon the outcome of an arbitration proceeding in which its charterer is claiming damages from Plaintiff arising out of the same malfunctions.  Plaintiff is defending against that claim in arbitration and contends it owes no damages to its charterer. Plaintiff states that the only reason it has not agreed to Defendants' proposed stipulation, however, is the possibility of incurring additional damages if it loses the arbitration dispute. In response, via electronic mail the day after the telephonic hearing, Defendants agreed further to "stipulate to the amount (quantum) of damages, if any, awarded by this arbitration panel," in the event that their Motion to Dismiss for *Forum Non Conveniens* is granted, while still reserving the right to fight causation, or Defendants' liability to Plaintiff, for any such damages awarded by the arbitral panel.

With no contest on the amount of Plaintiff's actual damages, there will be no need for Plaintiff to present damages proof at

---

[24] Document No. 55 at 4-5; Document No. 62 at 1-2.

trial.[25]  Thus, Plaintiff will need only to prove that Defendants'
allegedly negligent design and manufacture of the engine control
system subjects them to liability for the agreed amount of damages.
Neither party asserts that any local witnesses are relevant to the
cause of the accident in Houston, as opposed to damages resulting
therefrom.  The system was designed and manufactured in Belfort,
France for a ship in an Italian shipyard, pursuant to agreement
between French and Italian companies.[26]  It would follow that
documents and witnesses relating to the system's manufacture are
far more likely to be found in or near France than in this
jurisdiction, rendering France a more convenient forum based upon
this factor.[27]  *See* <u>BBC Chartering & Logistic GmbH & Co. K.G. v.
Siemens Wind Power A/S</u>, No. H-06-1169, 2008 WL 155048, at *4 (S.D.
Tex. Jan. 15, 2008) (documents relevant to litigation were all
located in Germany, Denmark, and France, making Germany a more

---

[25] *See* <u>Air Crash</u>, 821 F.2d at 1166 ("There are many factors
that might bear on the granting or denial of the motion, e.g.,
discovery, *stipulations*, admissions, the joinder or dismissal of
parties, which frequently develop or occur after the action
commences." (emphasis added)); *cf.* <u>Pain v. United Techs. Corp.</u>, 637
F.2d 775, 785 (D.C. Cir. 1980), *overruled in part on other grounds
by* <u>Piper Aircraft</u>, 102 S. Ct. at 258 (affirming district court
dismissal on *forum non conveniens* grounds where one of the
conditions of dismissal was that defendant not contest liability in
the alternative forum).

[26] Document No. 55 at 2-3, 11-12.

[27] According to Converteam SAS's general counsel, Bruno
Berkrouber, all documents relating to the design, manufacture, and
installation of the system are, in fact, located in France.
Document No. 55, ex. B at 1.

convenient forum than Houston). In response, Plaintiff cites Second Circuit cases for the proposition that "[f]or many years, courts in [the Second] Circuit have recognized that modern technologies can make the location of witnesses and evidence less important" in a *forum non conveniens* analysis. *See, e.g.*, <u>Metito (Overseas) Ltd. v. Gen. Elec. Co.</u>, No. 05 Civ. 9478, 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006). The Fifth Circuit, however, has not minimized the importance of the location of documents and witnesses in a *forum non conveniens* analysis. *See, e.g.*, <u>Saqui</u>, 2010 WL 184252, at *6, (noting the location in Mexico of relevant witnesses and documents); *see also* <u>BBC Chartering</u>, 2008 WL 155048, at *4 ("Technological advances do not negate the fact that all the primary witnesses and critical documentation are located abroad and are, therefore, remote from and quite inaccessible to a Houston forum."). In sum, the ease of access to evidence relevant to the liability issues actually in controversy weighs heavily in favor of dismissal in favor of a French forum.

### 2. *Availability of Compulsory Process*

This factor is neutral. All relevant fact witnesses are located outside of this Court's subpoena power. Likewise, according to Defendants, France "would not likely subpoena the appearance of French witnesses."[28] *See* <u>BBC Chartering</u>, 2008 WL

---

[28] Document No. 55 at 13.

155048, at *4 (factor found neutral because neither United States
District Court for the Southern District of Texas nor the German
courts could subpoena relevant witnesses).

### 3.   *Availability and Cost of Willing Witness Attendance*

This factor strongly favors dismissal.  Defendants have
identified seven prospective witnesses with knowledge of relevant
facts: (1) Jean-Yves Fiolet, Converteam's primary contact between
Plaintiff and Defendants following the alleged engine failures, who
is a resident citizen of France; (2) Cedric Hebert, a former
contractor who worked on board the vessel, and is a citizen of
France whose last known address is in France; (3) Bruce Kauffman,
a field service technician who works for Converteam in the United
Kingdom; (4) Eric Morey, a field service technician who left the
company but still resides in France; (5) Andre Morrier, a former
employee or contractor who is a French citizen with a last known
address in France; (6) Pierre-Yves Rillot, a former contractor who
worked on board the Vessel, who is also a French citizen with a
last known address in France; and (7) Jean-Francois Pasteur,
Converteam's Marine Service Manager who lives and works in Belfort,
France.[29]  Plaintiff, on the other hand, designates as witnesses
three of the above named residents of France (Fiolet, Rillot, and

---

[29] Document No. 55 at 11-12.

13

Morrier) plus four persons who respectively reside in Louisiana, Houston, California, and Connecticut.[30]

Four of the five French witnesses designated by Defendants and two of the three French witnesses designated by Plaintiff are *former* employees or contractors.  It is less likely that Plaintiff or Defendants would be able to persuade European third-party witnesses to testify in Houston than in France.  *See, e.g.*, Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 375 (5th Cir. 1992) (contrasting the potential difficulty in obtaining attendance of defendant's former employee witnesses with the likely attendance of employees of a corporation that had agreed to cooperate with the plaintiff); Tjontveit v. Den Norske Bank ASA, 997 F. Supp. 799, 808 (S.D. Tex. 1998) (noting the importance of considering key witnesses, "*especially* third-party witnesses" (emphasis added)).  In other words, given that compulsory process evidently is no more available in France than it would be in Houston to compel the attendance of French witnesses, it stands to reason that the key French witnesses more likely would be *willing* to appear in France, a forum significantly more convenient for them.

Finally, Plaintiff's argument that Defendants could simply depose all their European fact witnesses to accommodate the convenience of Plaintiff's one specially retained American expert

---

[30] Document No. 59 at 12.

witness is unavailing.[31]   The Supreme Court has indicated the importance of live testimony: "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." Gulf Oil Corp. v. Gilbert, 67 S. Ct. 839, 844 (1947); *see also* Perez & Compania (Cataluna), S.A. v. M/V Mexico I, 826 F.2d 1449, 1453 (5th Cir. 1987) (noting same in response to plaintiff's assertion that testimony could be obtained by affidavits).

In sum, the availability of willing witnesses, and the cost of securing their attendance in court, heavily weighs in favor of dismissal in favor of a French forum.

### 4.   *Possibility of Viewing Relevant Premises*

With damages not at issue, no relevant premises remain in the case to be viewed.   Regardless, any evidence of damage in the Houston Ship Channel has long since been cleaned up or repaired. This factor is therefore neutral.

### 5.   *Other Practical Factors*

The Court has considered some minor factors argued by the parties, such as the need for translation services, and finds that

---

[31] *See* Document No. 59 at 13.

none of them weighs heavily in the balance and all pale in comparison to the major factors discussed above.

### 6. *Public Interest*[32]

The private interest factors weigh so clearly in favor of dismissal that public interest factors need not be considered. Nonetheless, their consideration also favors dismissal. Plaintiff has shown no local interest in this entirely non-local controversy. A German shipowner seeks to recover damages for a French company's negligent design of an engine system installed on a ship built in Italy, which system malfunctioned during the ship's call at the Port of Houston and later at a port in Brazil. Damages sustained by Vopak to its dock in Houston were fully settled and the claim was dismissed, and Defendants have agreed to the full amount of the German entity's claimed actual damages arising from the allision in Houston. There is no local public interest in what remains of this controversy. Moreover, the fact that the successor company to the French manufacturer has some affiliation with a United States company (here, both Converteam SAS and Converteam, Inc. share the

---

[32] The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. Saqui, 2010 WL 184252 at *7.

same parent corporation, Converteam Group SAS), which allegedly
maintains an office in Houston, in no way roots the controversy in
Houston.

Furthermore, dismissal in favor of a French forum will also
avoid unnecessary issues in conflict of laws.  For example,
Defendants contend that the claims of negligence in the design and
manufacture in France of the main engine system circuit board and
its installation on the vessel in Italy will require application of
French or Italian law.  Plaintiff takes exception to this by
arguing only that the terms and conditions of the European
shipbuilding contract "cannot be enforced against Plaintiff," and
that Defendants have not persuasively shown that "any law other
than that of the United States should apply."  The eight Lauritzen-
Rhoditis factors govern choice of law in admiralty actions.  _See_
Coats v. Penrod Drilling Corp., 5 F.3d 877, 886-87 (5th Cir. 1993)
(citing Hellenic Lines, Ltd. v. Rhoditis, 90 S. Ct. 1731, 1733-34
(1970); Lauritzen v. Larsen, 73 S. Ct. 921, 928-33 (1953)).  Based
on a cursory analysis of these eight factors, to say the least
there is a potential likelihood of application of foreign law,
which favors dismissal.  _See_ PT United Can Co. v. Crown Cork & Seal
Co., 96 Civ. 3669, 1997 WL 31194, at *10 (S.D.N.Y. Jan. 28, 1997),
_aff'd_, 138 F.3d 65 (2d Cir. 1998).[33]  This analysis need not be

---

[33] The alleged wrongful act--negligent design and manufacture--
took place in France, with installation in Italy, but the allegedly
resultant malfunctions took place in Houston and Brazil; the M/V

17

made, however, in deciding a *forum non conveniens* dismissal, and neither party has provided an in-depth analysis of the eight factors. *See* <u>Perforaciones Exploración v. Producción v. Marítimas Mexicanas, S.A. de C.V.</u>, No. 08-41021, 2009 WL 4666959, at *4 (5th Cir. Dec. 9, 2009) (unpublished op.) ("[A] district court need not conduct a conflicts of law analysis before ruling on forum non conveniens . . . ." (citing <u>Air Crash</u>, 821 F.2d at 1163 n.25)). Indeed, even if the Court were to determine that United States law applies, this factor would not overcome the factors discussed above that weigh heavily in favor of dismissal. *See, e.g.,* <u>In re Air Crash Near Athens, Greece on August 14</u>, 479 F. Supp. 2d 792, 804-05 (N.D. Ill. 2007).

D.   <u>Timing of the motion to dismiss</u>

Finally, Plaintiff contends that the timing of Defendant's motion renders transfer inconvenient due to the length of time that has passed since it filed the case.[34]   The length of time, while

---

Ievoli is "registered in the United Kingdom"; Marnavi, both the injured party and the shipowner, is a German entity, with its base of operations presumably abroad; France, as discussed above, is an available forum; the law of the current forum, the United States, "is entitled little weight because it ipso facto supports the law of the forum." <u>Ferrera</u>, 1996 WL 80106, at *5 (citing <u>Fogleman v. Aramco</u>, 920 F.2d 278, 283 (5th Cir. 1991)).

[34] This is not like <u>Rodriguez v. Transnave, Inc.</u>, 810 F. Supp. 194, 198 (S.D. Tex. 1993), where "substantial trial preparations" had taken place, and where the parties had "marshaled the facts and identified witnesses who are required for the trial to go forward." To the contrary, the parties recently requested an Amended

relevant, is not determinative--particularly where, as here, circumstances in the case have changed so as to render this forum inconvenient. *See* <u>Air Crash</u>, 821 F.2d at 1165 (motion is timely if brought within a reasonable time after the circumstances that are the basis of the motion have developed). Specifically, all parties joined in a motion to dismiss Vopak, the *only* local party in this action, on September 3, 2009.[35]   Defendants filed their Motion to Dismiss the next day.  Vopak was actually dismissed on September 8. Defendants were diligent in filing their motion as soon as possible after the circumstances changed.

The duration of the case's pendency until now is otherwise not determinative absent some indication that Plaintiff will be prejudiced by dismissal.  Actions that have been pending just as long and longer have been dismissed on *forum non conveniens* grounds. *See, e.g.*, <u>Empresa</u>, 955 F.2d at 370-71, 373-74 (affirming dismissal of suit on *forum non conveniens* grounds after eight years of litigation, where the United States parties had settled out, leaving only foreign litigants); *see also, e.g.*, <u>Ionescu v. E.F. Hutton & Co. (France) S.A.</u>, 465 F. Supp. 139, 140-41, 147 (D.C.N.Y.

---

Scheduling and Docket Control Order extending the deadlines to designate expert witnesses to April 9 and May 7, 2010, and to move the discovery deadline to Friday, July 16, 2010.  Document No. 63, ex. A.  They jointly assert that "discovery and expert designation has been delayed by agreement, pending the Court's consideration of Defendants' Motion to Dismiss for Forum Non Conveniens."  <u>Id.</u> at 1.

[35] Document No. 54.

1979) (granting motion to dismiss for *forum non conveniens* over two years after suit filed).

### III. Order

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Dismiss for *Forum Non Conveniens* (Document No. 55) is conditionally GRANTED, and this case is DISMISSED upon the following conditions:

> 1.   Plaintiff shall proceed without undue delay to file its claim in France, and not later than thirty-five (35) days thereafter Defendants shall appear and answer such litigation, fully waiving and relinquishing any defense based upon statutes of limitations, laches, lack of personal jurisdiction, improper service of process, or the counterparts to such doctrines under the laws of France, and shall otherwise fully join issue on the merits in the litigation for purposes of Plaintiff's claim being decided on the merits in the foreign venue; and

> 2.   All of Defendants against whom Plaintiff brings suit in France shall stipulate to and agree to the full amount of the Plaintiff's actual damages claimed by Plaintiff in the amount of $1,082,770, which sum is composed of $964,550 for vessel repair, pollution clean-up and control, tug and pilot services, and reimbursement for federal and state fines, together with $118,220 for loss of charter hire, for the total sum of $1,082,770; and such Defendants shall also stipulate to and agree to the additional amount of damages, if any, arising out of malfunctions of the main engine control system on the M/V Ievoli Splendor and adjudged against Plaintiff and in favor of its charterer in the pending arbitration proceeding between those two parties.  The purpose of this stipulation and agreement by Defendants as to the full amount of actual damages incurred, plus the amount of damages, if any, adjudged against Plaintiff in the referenced arbitration decision, is to eliminate the need for Plaintiff to prove in France through witnesses and

other evidence the amount of Plaintiff's damages, which leaves in dispute for adjudication only the liability question of whether Plaintiff is entitled to recover those damages from Defendants.

If the courts of France over Plaintiff's opposition should decline to accept a case properly filed by Plaintiff against Defendants, or if Defendants should fail to respond, to join issue on the merits within the time allowed, to make the necessary waivers or agreements, and/or to make a binding stipulation and agreement as to the full amount of Plaintiff's actual damages in the total sum of $1,082,770, plus the arbitration award, if any, as required above, then this case may be reinstated in this Court upon application by Plaintiff accompanied by a verified statement of the grounds for such reinstatement.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 26th day of February, 2010.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE